UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DYVON McKINNON,<br><br>                  Petitioner,<br><br>     vs.<br><br>JAMES CONWAY,[1] Superintendent, Attica Correctional Facility,<br><br>                  Respondent. | No. 9:06-cv-00717-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Dyvon McKinnon, appearing *pro se*, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently in the custody of the New York State Department of Correctional Services incarcerated at the Attica Correctional Facility.  After a jury trial, Petitioner was convicted in the Onondaga County Supreme Court of three counts of Sodomy in the First Degree (N.Y. Pen. Law §§ 130.50(1), (4)), four counts of Sexual Abuse in the First Degree (N.Y. Pen. law § 130.65(1), and three counts of Endangering the Welfare of a Child (N.Y. Pen. Law § 260.10(1)).  Petitioner was sentenced to concurrent determinate terms of 25 years on the sodomy counts, seven years on the sexual abuse counts, and one-year on the child endangerment counts.  Respondent has answered the petition; Petitioner has not filed a traverse.

I.  PRIOR PROCEEDINGS

      Petitioner timely appealed his conviction to the Appellate Division, Fourth Department, which affirmed his conviction on February 4, 2005, and the New York Court of Appeals denied leave to appeal on May 16, 2005.  *People v. McKinnon*, 788 N.Y.S.2d 766 (N.Y.A.D.), *lv. denied*, 831 N.E.2d 979 (N.Y. 2005).  On May 17, 2006, Petitioner timely filed his petition in this Court.

---

      [1] James Conway, Superintendent Attica Correctional Facility, substituted for Superintendent, Great Meadow Correctional Facility.  Fed. R. Civ. P. 17(d).

## II.  STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000), which in this case was that of the Appellate Division.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

If a federal claim has not been adjudicated on the merits, AEDPA deference is not required.  *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).  In that situation, conclusions of law and mixed questions of fact and conclusions of law are reviewed *de novo*.  *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).  Where there is no reasoned decision of the state court addressing the ground or grounds raised by the Petitioner on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.  *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006) (applying the *Strickland* standards).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief.  This Court may only address violations of federal law.  28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (citations and internal quotation marks omitted).  It is a fundamental precept of dual federalism that the states possess primary authority for

defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). It is also presumed that the state court knew and correctly applied state law. *See Walton v. Arizona,* 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Fry v. Piler*, 551 U.S. ___, ___, 127 S.Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

## III. GROUNDS RAISED/DEFENSES

Petitioner raises five grounds: (1) the verdict was against the weight of the evidence; (2) the trial court abused its discretion by denying the severance motion; (3) the knife should not have been admitted in evidence because it was not relevant to the case and more prejudicial than probative; (4) police testimony improperly bolstered the testimony of other witnesses; and (5) the identification procedure was unduly suggestive.

Respondent raises as a defense that Petitioner has not exhausted his state court remedies as to the first, third, and fourth grounds.

## IV. DISCUSSION

Ground 1: (Sufficiency of the Evidence).

In rejecting Petitioner's argument that the evidence was insufficient to support the verdict, the Appellate Division held (788 N.Y.S.2d at 766–67):

> On appeal from a judgment convicting him upon a jury verdict of three counts each of sodomy in the first degree (Penal Law former § 130.50[1], [4] ) and endangering the welfare of a child (§ 260.10[1] ), and four counts of sexual abuse in the first degree (§ 130.65[1] ), defendant contends that the evidence is legally insufficient to support the conviction. Defendant has preserved his contention for our review only with respect to the sodomy counts (citation omitted) and, in any event, we conclude that defendant's contention lacks merit (citation omitted). The People presented the testimony of the victims establishing each element of the crimes charged, and the victims identified defendant as the perpetrator. Also contrary to defendant's contention, the verdict is not against the weight of the evidence (citation omitted). Great deference is accorded to the jury's resolution of credibility issues (citation omitted), and it cannot be said herein that the jury failed to give the evidence the weight it should be accorded (citation omitted).

The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). This Court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Petitioner's argument focuses on what he perceives to be gaps or inconsistencies in the evidence. Petitioner misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac, supra*. Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n. 16. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law. That such evidence exists is clearly established by the record in this case. Petitioner bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Petitioner has failed to carry. Petitioner is not entitled to relief on his first ground.[2]

Ground 2: (Severance).

In rejecting Petitioner's argument that the trial court erred in not severing some of the counts, the Appellate Division held: (788 N.Y.S.2d at 767):

> We reject the further contention of defendant that County Court erred in denying his motion to sever counts 1 through 7 from counts 8 through 14 of the indictment. Counts 1 through 7 involved an attack on two victims on August 27, 2000, while counts 8 through 14 involved an attack on a victim that occurred on March 10, 2001. "There was no substantial difference in the quantum of proof presented with respect to the separate sexual assaults, and defendant made no claim that he had important testimony to offer [regarding the attack on August 27, 2000] but had [a] genuine need to refrain from testifying regarding the [attack on

---

[2] Respondent contends that Petitioner has not properly exhausted his state court remedies on this ground. The Court need not address that issue as it may deny the petition on the merits, the failure of a petitioner to exhaust available state court remedies notwithstanding. 28 U.S.C. § 2254(b)(2).

>March 10, 2001] . . . .  The assertion that the trier of fact . . . would be unable to consider separately the evidence pertaining to each [attack] was purely speculative"(citations omitted).  Additionally, we note that "the possibility of prejudice was limited by the court's curative instruction"(citation omitted).  "Trial courts must be afforded reasonable latitude in exercising discretion in [severance] matters and in doing so, must weigh the public interest in avoiding duplicative, lengthy and costly trials against defendant's right to a fair trial free of undue prejudice"(citations omitted).

Joinder of offenses rises to the level of a constitutional violation only if it actually renders Petitioner's state trial fundamentally unfair and hence, violative of due process.  *See United States v. Lane,* 474 U.S. 438, 446 n. 8 (1986).  In considering whether a violation of due process has occurred, the emphasis must be on the word "actually"; for, viewed clearly, it is only the consequences of joinder, over which the trial judge has much control, and not the joinder itself, which may render the trial "fundamentally unfair."  *See United States ex rel. Evans v. Follette,* 364 F.2d 305, 306 (2d Cir.1966) (per curiam) (decision to consolidate charges for trial does not itself raise an issue of constitutional dimension).  The Second Circuit has recognized that "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all."  *United States v. Lotsch,* 102 F.2d 35, 36 (2d Cir.) (L. Hand, J.).  It has also noted that " 'juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one.' "  *United States v. Werner,* 620 F.2d 922, 929 (2d Cir.1980) (quoting *United States v. Smith,* 112 F.2d 83, 85 (2d Cir.1940)); *see also Corbett v. Bordenkircher,* 615 F.2d 722, 724-25 (6th Cir. 1980) (describing forms of prejudice that may result from joint trial).

The Supreme Court has explicitly accepted that "[t]his type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person . . . in the same trial is a valid governmental interest."  *Spencer v. Texas,* 385 U.S. 554, 562 (1967).  "Therefore, where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the

events as they unfolded during the joint trial." *Herring v. Meachum,* 11 F.2d 374, 378 (2d Cir. 1993) (emphasis in the original).

This Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003). Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief on his second ground.

Ground 3: (Introduction of the Knife).

During a search of Petitioner's room approximately a month after the Petitioner had committed the last criminal act for which he was charged, the police found a knife in Petitioner's room. The knife was entered into evidence over Petitioner's objections. Petitioner argues that the introduction into evidence of the knife was erroneous in that its probative value was outweighed by its prejudicial effect. This ground was presented to the Appellate Division on the direct appeal. The Appellate Division did not address this issue in its reasoned opinion; instead, it included a catchall "[w]e have considered defendant's remaining contentions and conclude that they are without merit." 788 N.Y.S.2d at 767. Accordingly, this Court must determine the issue *de novo* on the record before it.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998). Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "A district court is accorded a wide discretion in determining the

admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."  *United States v. Abel,* 469 U.S. 45, 54 (1984).

In this case, the record establishes that Petitioner was, or may have been, armed with a knife when the last offense was committed.  Evidence in the record also shows that Petitioner told one of the victims that he was armed with a knife.  The knife was found under circumstances that indicated the knife was under his control if not in his actual possession.  This evidence has at least some probative value.  The question of weighing the probative value of the knife versus its potential prejudicial effect was committed to the sound discretion of the trial court.  Any error in admitting the knife into evidence in this case was not so extremely unfair that its admission violated fundamental conceptions of justice.

This Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005);  *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief on his third ground.[3]

Ground 4:  (Police Testimony as Bolstering Testimony of Other Witnesses).

Petitioner contends that permitting a police detective to testify, based on his experience, to the fact that children who are victims of sexual assault generally tend to describe their assailants as being larger and older than they actually are.  Although this issue was raised on direct appeal, the Appellate Division did not directly address the issue in its reasoned opinion.

---

[3] Respondent contends that Petitioner has not properly exhausted his state court remedies on this ground.  The Court need not address that issue as it may deny the petition on the merits, the failure of a petitioner to exhaust available state court remedies notwithstanding.  28 U.S.C. § 2254(b)(2).

Instead, as with the third ground, it included a catchall "[w]e have considered defendant's remaining contentions and conclude that they are without merit." 788 N.Y.S.2d at 767. Accordingly, this Court must determine the issue *de novo* on the record before it.

During *voir dire* the trial court instructed the jury:

> THE COURT:  All right. It's a good time to talk a little bit about this. Police officers who testify.  We're going to talk about this and you're going to hear this a lot, but police officers, and I instruct you, under our law they're not entitled to any more believability or credibility or any less believability or credibility than any other individual witness.  Can each of you accept that?
>
> * * * *
>
> THE COURT:  A police officer that testifies, he's not entitled to any more believability or less believability by virtue of being a police officer.  Can each of you promise me that you can do that, judge their credibility as you would any other and Mr. Darstein.

A little later in *voir dire*, the trial judge reiterated:  "Talked about police officers' testimony.  I don't need to repeat that but they're not entitled to any more or less believability or credibility than any other witness."

In instructing the jury, the trial judge gave the following instruction *vis-a-vis* expert witness testimony:

> Now, there has been some expert testimony in this case.  Expert testimony is proper evidence to be considered by the jury.  The law permits an expert or person learned in a particular subject or field, not only to testify to the facts but to also give his or her opinion based upon such facts.  This is allowed because an expert is supposed to -- his or her past experience of research and study to have a particular knowledge upon the subject of the inquiry.  An expert is supposed to be more capable than a laymen in drawing conclusions from the facts and basing opinions upon them.
>
> In determining the value of the testimony of any expert, whether he or she may have given facts of his or her particular field, or whether he or she gave facts and also opinion testimony, you should consider their learning, their professional standing, their opportunity for study, and their experience.  The purpose of expert testimony is to aid you in your deliberations as to the matters under inquiry concerning which the expert is permitted to testify.  Such testimony is merely a guide to you in your deliberations in consideration of the facts of this case.  A jury at all times is the sole and exclusive Judge of the facts.  Expert testimony should not be either accepted or rejected indiscriminately.  It should be weighed and considered by you the same as any other evidence.

> After weighing and considering such evidence, you are at liberty to disbelieve it when it is improbable or incredible, or if you believe that the expert witness has testified falsely or is mistaken. On the other hand, you are at liberty to accept it, and act on it, if you find that the testimony is based on underlying facts which have been established and that the expert knows what he or she is talking about. The weight and value of an expert's testimony and his or her credibility is for you, the jury, to decide.

Federal courts not infrequently allow police officers to testify as "experts" based upon their experience and/or training. *See e.g., United States v. Matera*, 489 F.3d 115, 121 (2d Cir. 2007) (testimony on composition and organization of New York crime families); *United States v. Evans*, 272 U.S. 1069, 1094 (8th Cir. 2001) (recruitment of prostitutes, relationship between prostitutes and pimps); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (IRS agent testimony that activities were illegal); *United States v. Diaz*, 878 F.2d 608, 617 (2d Cir. 1989) (operations of narcotic dealers); *see also Knapp v. White*, 286 F. Supp. 2d 766, 777 (E.D. Mich. 2003) (testimony that children often delay in reporting sexual abuse).

Here, the witness acknowledged that his testimony was based upon his experience as a police officer. The jury was specifically instructed that the testimony of police officers should be given no greater weight than any other witness. In addition, the trial court gave a limiting instruction about the role and purpose of expert testimony at trial, specifically it was a guide to be given no greater weight than any other testimony, and that the jury was the sole judge of the facts. *See United States v. Matera, supra*. This Court assumes that the jury followed the limiting instructions it was given. *Abney v. United States*, 431 U.S. 651, 664 (1977); *United States v. Sturdivant*, 244 F.3d 71, 80 (2d Cir. 2001); *United States v. Reyes*, 18 F.3d 65, 71–72 (2d Cir. 1994).

This Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003). Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e*., the state

court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. No decision of the Supreme Court squarely addresses the issue presented in his case. Supreme Court precedents do not clearly hold that a police officer may not competently testify, based upon his experience, as to the propensities of children who are victims of sexual assaults to describe their assailants as being larger or older than they are. Thus, it cannot be said that the Appellate Division unreasonably applied clearly established law. *Wright v. Van Patten*, 552 U.S. ___, ___ 128 S.Ct. 743, 747 (2008); *Carey v. Musladin*, 549 U.S. ___, ___, 127 S.Ct. 649, 654 (2007). Petitioner is not entitled to relief on his fourth ground.[4]

Ground 5: (Suggestive Identification).

Petitioner contends that the initial attempts at identifying the perpetrator of one of the attacks was unduly suggestive. A pretrial hearing was held on petitioner's motion to suppress identification testimony. The hearing testimony established that the showup identification took place some eleven to twelve minutes after Petitioner attacked the victim. Petitioner's house was located approximately a block and a half from where the attack occurred and the police officers first met P.W. and A.B.[5]

A.B. told the police that he had seen the man who attacked P.W. in the neighborhood before in the area, and that he thought he could identify him if he saw him again. After being driven to the area, A.B. pointed out Petitioner's house. The officer parked at the curb approximately 20 to 25 feet from the steps to the house. The officer spoke to Petitioner, and asked him to stand outside on his porch. Petitioner was not handcuffed or restrained in any way. An elderly woman and a young boy also stood on the porch. The officer asked A.B. if he recognized petitioner, and A.B. said that Petitioner looked like the man, but he was not certain. At trial, A.B. explained that he did not identify Petitioner at the showup because he was scared.

Another officer drove P.W. to Petitioner's residence. Petitioner was still standing on the steps of the house next to the first officer along with the elderly woman and a young boy. The

---

[4] Respondent contends that Petitioner has not properly exhausted his state court remedies on this ground. The Court need not address that issue as it may deny the petition on the merits, the failure of a petitioner to exhaust available state court remedies notwithstanding. 28 U.S.C. § 2254(b)(2).

[5] As does the Respondent, the Court is using only the initials of the juveniles involved. P.W. was the victim; A.B. was a witness who saw the Petitioner in the area of the assault at the time of the assault.

officer stayed in the car with P.W. and asked him to take his time and let him know if anyone looked familiar. P.W. looked at Petitioner for about a minute and told the officer he was not certain petitioner was the attacker.

Several hours later both A.B. and P.W. were shown a photo lineup containing five pictures, including one of the Petitioner. A.B. immediately identified the Petitioner's picture as the person he had seen in the area. On the other hand, P.W. stated that although Petitioner's picture looked like his assailant, he was not certain.

Analysis starts with the rule that due process is violated when an identification procedure is "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987). In this case, there are essentially two procedures, the showup in which Petitioner was alone and the photo lineup in which Petitioner was a part of a group of five.

In *Stovall*, the Supreme Court, although acknowledging that showing suspects singly to persons for the purpose of identification, and not part of a lineup, was widely condemned, declined to adopt a *per se* rule prohibiting the practice. Instead, it adopted a rule that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it." *Id*.

The Supreme Court has specifically declined to prohibit the practice of group photographs "either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Instead, "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id*.

Given the holdings in *Stovall* and *Simmons*, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d

Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  No decision of the Supreme Court squarely addresses the issue presented in his case.  Supreme Court precedents do not clearly hold that the identification procedure in this case was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.  Thus, it cannot be said that the Appellate Division unreasonably applied clearly established law. *Wright v. Van Patten*, 552 U.S. ___, ___ 128 S.Ct. 743, 747 (2008); *Carey v. Musladin*, 549 U.S. ___, ___, 127 S.Ct. 649, 654 (2007).  Petitioner is not entitled to relief on his fifth ground.

## V.  CONCLUSION AND ORDER

Petitioner is not entitled to relief on any of the grounds raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).  To the extent the issues raised in the petition were addressed by the Appellate Division, Fourth Department, in its decision on appeal no reasonable jurist could find that the decision was "objectively unreasonable." Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated:  May 1, 2008.

s/ James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
United States District Judge